UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDALL J. CUNNINGHAM,  )<br>                                        )<br>           Plaintiff,          )<br>                                        )<br>    v.                               )<br>                                        )<br> MICHAEL J. ASTRUE, Commissioner of the  )<br> Social Security Administration,        )<br>                                        )<br>           Defendant.       ) | Case No. C10-1081-RAJ-BAT<br><br>**REPORT AND**<br>**RECOMMENDATION** |

Randall J. Cunningham seeks review of the denial of his application for Disability Insurance Benefits. He contends that the ALJ erred by improperly rejecting his credibility, the lay testimony, and the medical evidence; and incorrectly determined that he could perform his past relevant work. Dkt. 11. For the reasons below the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

### I.    FACTUAL AND PROCEDURAL HISTORY

Randall Cunningham is currently 50 years old, has completed two years of college, and has past work experience as a warehouse manager in training. Tr. 126, 133. On July 26, 2005, he applied for DIB, alleging disability as of July 1, 2003. Tr. 103. His application was denied initially and on reconsideration. Tr. 71, 78. After a hearing conducted on July 24, 2008, the ALJ issued a decision on September 24, 2008, finding Cunningham not disabled. Tr. 11. The

REPORT AND RECOMMENDATION - 1

Appeals Council denied Cunningham's request for review, making the ALJ's decision the final decision of the commissioner. Tr. 1.

## II. THE ALJ'S DECISION

Applying the five-step disability evaluation process,[1] the ALJ made the following findings:

**Step one:** Cunningham did not engage in substantial gainful activity from his alleged onset date through his date last insured. Tr. 13.

**Step two:** Cunningham had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, medial meniscus tear in the left knee, and an affective disorder. *Id*.

**Step three:** Cunningham's impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual functional capacity:** Cunningham had the RFC to perform light work and could occasionally climb ladders, ropes or scaffolds. He could occasionally kneel, crouch or crawl. He is limited in his ability to reach overhead and work around vibrations or hazards. He would have some difficulty maintaining concentration for extended periods of time, but he would be able to carry out more than one or two step instructions in a reasonably consistent manner. Tr. 22.

**Step four:** Cunningham could perform his past work as a manager in training. Tr. 24. Accordingly, Cunningham was not disabled from his alleged onset date through his date last insured. Tr. 25.

## III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

### IV.   DISCUSSION

**A.   The ALJ's credibility finding**

Cunningham argues that the ALJ erred in finding him not credible. In evaluating a plaintiff's credibility, the ALJ must first determine whether his medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. *See* 20 C.F.R. § 404.1529. If so, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity for work. *See id.* If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and conduct, his daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Id.* at 1284.

Here, the ALJ found that Cunningham was not credible in his reports of disabling physical or mental impairments. Tr. 23-24. In considering whether Cunningham's impairments meet or equal a listing, the ALJ noted that treating psychologist Howard Leonard, Ph.D., included a diagnosis of malingering. Tr. 294. Cunningham argues that the ALJ erroneously "latched on to Dr. Leonard's unsupported diagnosis" and used it to reject Cunningham's credibility. Dkt. 11 at 4. But the ALJ did not use Dr. Leonard's diagnosis to find Cunningham not credible without giving specific reasons. And to the extent that Dr. Leonard's diagnosis influenced the ALJ's

REPORT AND RECOMMENDATION - 3

credibility analysis, the ALJ did not err in considering a treating doctor's opinion that Cunningham was malingering.  *See Smolen*, 80 F.3d at 1284.  In any event, the ALJ provided specific, clear and convincing reasons for finding Cunningham not fully credible.

The ALJ found that Cunningham reported severe, disabling levels of pain, but took very little pain medication.  Tr. 23.  Evidence of conservative treatment, including the use of over-the-counter pain medications, is sufficient to discount a claimant's testimony about an impairment's severity.  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).  Cunningham argues that the record shows ongoing use of medications, primarily Percocet and Flexeril, steroid injections, physical therapy, and surgery for treatment of pain.  Dkt. 11 at 6.  But the record also shows that Cunningham reported in 2006 that he took over-the-counter pain medications daily, but took Percocet and Flexeril only once a week.  The medication bottles he had at that time were from 2002 and 2003, although he stated he had current refills in his car.  Tr. 321.  The ALJ's finding is a rational interpretation of the evidence.

The ALJ found that Cunningham reported activities that were inconsistent with his claimed limitations and that he made inconsistent statements about his impairments.  Tr. 23-24.  Such inconsistencies are a factor in evaluating a claimant's credibility.  *Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").  With respect to Cunningham's physical impairments, the ALJ found, for example, that Cunningham reported that he could not walk, stand, or sit, but he was able to walk nine minutes on a treadmill test and travel to California.  With respect to Cunningham's mental impairments, the ALJ found, for example, that at times Cunningham reported being fatigued and exhausted and at others he reported his mind raced and he was full of energy.  For each inconsistency the

REPORT AND RECOMMENDATION - 4

1  ALJ found, Cunningham offers an alternative explanation that he asserts is consistent with his
2  claimed limitations. Dkt. 11 at 6-10. However, where there is more than one rational
3  interpretation of the evidence, the Court must uphold the ALJ's interpretation. *Thomas*, 278 F.3d
4  at 954. The ALJ's findings are supported by substantial evidence and are rational interpretations
5  of the evidence. As such, the Court should not disturb them.

6      The ALJ further found that Cunningham has secondary gain motivation, a "rather poor"
7  work record, and motivational issues. A claimant's poor work history can be a clear and
8  convincing reason to discount his testimony. *Thomas*, 278 F.3d at 959. The ALJ noted that two
9  of Cunningham's top four earning years occurred in 2001 and 2002, after his alleged back injury,
10 and he made just $11,335 and $13,023 in those years. The ALJ also noted that Cunningham's
11 wife has mental and physical impairments and yet is able to work full time and support
12 Cunningham. Tr. 23. Cunningham argues that his record of working at multiple jobs over the
13 last 15 years shows that he was motivated to work. He also points to his various statements that
14 he wants to be productive, work, and contribute. Dkt. 11 at 11-12. Once again, Cunningham
15 merely offers an alternative interpretation of the evidence. This is not sufficient to undermine
16 the ALJ's interpretation.

17     The ALJ also found that Cunningham was doctor shopping for the purpose of obtaining
18 Social Security benefits. The ALJ pointed to the fact that Cunningham saw a number of
19 different doctors and he asked his naturopathic doctor for a referral to a medical doctor because
20 Social Security would not accept the naturopath's reports. Tr. 24. This is not a clear and
21 convincing reason to find Cunningham not fully credible. The mere fact of seeing numerous
22 doctors does not indicate doctor shopping. And Social Security regulations provide that a
23 naturopathic doctor is not an "acceptable medical source" for purposes of establishing a

REPORT AND RECOMMENDATION - 5

medically determinable impairment, thus explaining why Cunningham sought a referral to a medical doctor.  *See* 20 C.F.R. § 404.1513(a), (d).  Although this was not a valid reason to question Cunningham's credibility, an ALJ's use of an invalid reason to support is adverse credibility finding may be harmless if, despite the error, there remains substantial evidence to support the ALJ's conclusion.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).  The additional reasons the ALJ provided are more than adequate to support his credibility determination.  The error was thus harmless.

In sum, Cunningham has not shown that the ALJ's credibility determination is not supported by substantial evidence or that the ALJ failed to give clear and convincing reasons to find Cunningham not fully credible.  The Court should not disturb the ALJ's credibility assessment.

**B.     The lay witness testimony**

Cunningham argues that the ALJ erred in rejecting his wife's testimony.  Lay testimony about a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific, germane reasons for doing so.  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ gave several reasons for not giving significant weight to Ms. Cunningham's testimony.  The ALJ found that Ms. Cunningham largely focused on obsessive compulsive symptoms that have not been clearly diagnosed. Tr. 24.  Ms. Cunningham testified that she believed Cunningham was hoarding items and she had researched obsessive compulsive disorders online and in books. Tr. 33-37.  The ALJ left the record open for a report from treating psychologist Constance Kehrer, Ph.D., regarding this issue. Tr. 29.  In her report, Dr. Kehrer listed diagnoses of major depressive disorder and dysthymic disorder, but did not diagnose

REPORT AND RECOMMENDATION - 6

1  Cunningham with obsessive compulsive disorder or another anxiety-related disorder.[3]  Tr. 643.

2  Dr. Kehrer checked boxes indicating that Cunningham had several anxiety-related symptoms,

3  but she left blank a question that asked her to rate functional limitations due to an anxiety-related

4  disorder.  Tr. 644, 648.  An ALJ may reject lay witness evidence that is inconsistent with the

5  medical evidence.  *Bayliss*, 427 F.3d at 1218.  The fact that Ms. Cunningham's lay opinion that

6  Cunningham suffers from obsessive compulsive disorder was uncorroborated by any medical

7  source was a germane reason to reject her testimony.

8        The ALJ also found that Ms. Cunningham reported that Cunningham could not walk the

9  dog, but the evidence showed that Cunningham did in fact do this.  Tr. 24.  Cunningham reported

10  at the emergency room that his chest pain came on when he was walking the dog.  Tr. 568.  He

11  reported to his physical therapist that his activities included short walks with the dog.  Tr. 429.

12  And he testified at the hearing that sometimes when he cannot sleep, he will get up and walk the

13  dog.  Tr. 57.  Cunningham suggests that perhaps Ms. Cunningham meant he could not walk their

14  large, 50-pound dog, but he could walk their small terrier.  Dkt. 11 at 16.  Although it may be

15  possible to interpret Ms. Cunningham's testimony this way, this Court may not reject the ALJ's

16  interpretation of the evidence in favor of Cunningham's suggested interpretation.  *Thomas*, 278

17  F.3d at 954.  The contradiction between Ms. Cunningham's testimony and the other evidence is

18  another germane reason to find her not fully credible.

19        The ALJ also found that Ms. Cunningham was "clearly" motivated to have Cunningham

20  obtain Social Security benefits, pointing out that this has been Cunningham's stated aim for a

21  number of years, and that Ms. Cunningham works full time while Cunningham is on his own

22  during the day.  Tr. 24.  Evidence that a spouse knows little about a claimant's functional

---

23  [3] In an earlier report, Dr. Kehrer included "Rule Out Anxiety Disorder" in her list of diagnoses.  Tr. 418.

REPORT AND RECOMMENDATION - 7

capacity or exaggerated a claimant's symptoms in order to obtain disability benefits may be a reason to reject that spouse's testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). But without such evidence, these are generalized statements that could be applicable to all spouses or family members, and are thus not specific reasons to reject an individual witness. *Id.* Nevertheless, because the ALJ provided other specific, germane reasons to reject Ms. Cunningham's testimony, the error here is harmless. *See id.* The Court should not disturb the ALJ's assessment of Ms. Cunningham's credibility.

**C.     The ALJ's step two analysis**

Cunningham argues that the ALJ erred in finding that colitis and sleep apnea were not medically determinable severe impairments. At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. To be medically determinable, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. *Id.* A claimant's statement of symptoms alone is not enough to establish a physical or mental impairment. 20 C.F.R. § 404.1508, 404.1528(a). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c), 404.1521(a). The step-two inquiry has been characterized as "a *de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

In considering Cunningham's bowel control problems, the ALJ found that Cunningham

REPORT AND RECOMMENDATION - 8

testified that he had these problems since he was in high school, but it was not mentioned in the medical record until recently. The ALJ also found that Cunningham reported to Luis Wainstein, M.D., in 2006 that he had bowel incontinence when he worked at Shurgard Storage, but rather than see a doctor he quit working and his bowels went back to normal after an extended bed rest. The ALJ remarked that an August 2007 colonoscopy was normal and while Cunningham's doctor suspected possible mild ulcerative colitis and prescribed medication, there are no treatment records relating to the condition before or after late 2007. Tr. 20.

Cunningham asserts that the record contains findings consistent with ulcerative colitis. Dkt. 11 at 17-18. A nurse practitioner opined that Cunningham's reported longstanding history of diarrhea was most likely caused by irritable bowel syndrome. Tr. 462. But a nurse practitioner is not an acceptable medical source for purposes of establishing the existence of an impairment. 20 C.F.R. § 404.1513(a), (d). Cunningham also discusses his own statements regarding his bowel control symptoms. But a claimant's statement of symptoms alone is insufficient to establish the existence of an impairment. 20 C.F.R. § 404.1508, 404.1528(a). Cunningham points to no evidence from an acceptable medical source sufficient to establish that colitis was a medically determinable impairment. The ALJ did not err in finding that colitis was not established.

In considering Cunningham's sleep apnea, the ALJ found that while this condition is clearly diagnosed in the medical record, Cunningham's own report is that the condition improves with use of his CPAP machine. The ALJ thus concluded that his sleep apnea was not severe. Tr. 20. Cunningham asserts that the CPAP machine improved, but did not resolve his sleep problems. Dkt. 11 at 18. However, at Cunningham's follow-up appointment, Scott Bonvallet, M.D., noted that Cunningham's use of his CPAP machine was variable, including some nights when he did

REPORT AND RECOMMENDATION - 9

not use it at all, even though Cunningham reported better sleep and increased energy when he used it. Tr. 459. An impairment that is effectively controlled with treatment cannot support a disability claim. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ's finding that Cunningham's sleep apnea is not severe when he uses his CPAP machine is a rational interpretation of the evidence that this Court should uphold.

Cunningham also argues that the ALJ erred in failing to specify the nature of his mental impairment. Dkt. 11 at 20. He notes that his treating and examining doctors diagnosed him variously with depressive disorder, bipolar disorder, attention deficit disorder, and pain disorder. Dkt. 11 at 20-22. The ALJ evaluated Cunningham's mental impairment using listing 12.04, affective disorders, but stated that "the diagnosis is not critically important in [his] analysis of the case as what is important is analyzing what limitations are caused by [Cunningham's] impairment." Tr. 21. The ALJ then proceeded to evaluate the "paragraph B criteria," which describe "impairment-related functional limitations that at incompatible with the ability to do any gainful activity." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00. The paragraph B criteria are used to assess the severity of all mental disorders. Thus, any error in the ALJ's failure to specify a disorder was harmless.

This court should uphold the ALJ's evaluation of Cunningham's medically determinable severe impairments.

**D.    The ALJ's evaluation of the medical evidence**

Cunningham argues that the ALJ erred by rejecting the opinions of his treating and examining doctors as to his physical and mental limitations. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81

F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing reasons."  *Id.* at 830-31.  Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

    *1.  Dr. Wainstein*

Dr. Wainstein performed a physical examination of Cunningham in January 2006.  He stated he was somewhat surprised and puzzled by his findings, and also noted there was a question of poor effort.  Tr. 324.  Nevertheless, Dr. Wainstein opined that Cunningham was limited to less than two hours standing and walking and less than six hours sitting; he could lift and carry 10 pounds; he had no manipulative limitations; he had frequent postural limitations as far as bending, squatting, crawling, or crouching; and he was restricted as far as climbing or working at heights.  Tr. 325.

Consulting doctor Jeffrey Merrill, M.D., reviewed Dr. Wainstein's report and disagreed with his opinion.  Dr. Merrill opined that Cunningham could stand and walk for about six hours and sit for about six hours; lift and carry 10 pounds frequently and 20 pounds occasionally; could occasionally climb, kneel, crouch, or crawl; was limited in reaching overhead; and should avoid

vibration and hazards. Tr. 327-33. The ALJ essentially adopted Dr. Merrill's opinion about Cunningham's physical residual functional capacity. Tr. 22.

Rather than giving a specific reason for rejecting Dr. Wainstein's opinion, the ALJ made the generalized finding that because he did not find Cunningham credible, "the limitations found by various physicians lose their credibility as well because the claimant's doctors rely on his reports when they assess what the claimant is capable of doing." Tr. 24. This wholesale rejection of apparently all examining and treating physicians' opinions does not rise to the level of specificity required to reject an examining doctor's opinion. An ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But that does not relieve the ALJ from the requirement to interpret the evidence and make specific findings. *See Magallanes*, 881 F.2d at 751. The ALJ failed to specifically address Dr. Wainstein's opinion, and, in general, he failed to differentiate between medical opinions based on Cunningham's subjective reports and those based on objective clinical observations. Moreover, the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies rejecting an examining doctor's opinion. *Lester*, 81 F.3d at 831. The ALJ failed to give sufficient reasons to reject Dr. Wainstein's opinion.

   *2. Dr. Kehrer*

Dr. Kehrer treated Cunningham from July 2006 through September 2008. Tr. 643. As noted above, she diagnosed Cunningham with major depressive disorder and dysthymic disorder. She opined that Cunningham had marked restrictions in his activities of daily living, marked difficulty in maintaining social functioning, marked deficiencies of concentration, persistence, and pace, and probably had repeated episodes of decompensation. Tr. 647. The ALJ found that

REPORT AND RECOMMENDATION - 12

Dr. Kehrer's assessment was not consistent with the observations of nurse practitioner Alice Laurens, A.R.N.P., who treated Cunningham for attention deficit disorder and other mental impairments, Sang Suh,, M.D., who examined Cunningham in November 2005, or Dr. Leonard, who treated Cunningham from June 2004 through September 2005.  The ALJ also noted that Dr. Kehrer did not include the results of the tests she based her conclusions on, and that the state agency physicians did not think that Cunningham had marked limitations.  The ALJ gave greater weight to these other opinions.  Tr. 21-22.

The mere fact that Dr. Kehrer's opinion was contradicted by the other providers' opinions was not in itself a valid reason to give her opinion less weight.  Rather, it meant that the ALJ had to give specific and legitimate reasons, supported by substantial evidence, to discount it.  In addition, if the ALJ felt he needed to examine the results of the testing done by Dr. Kehrer to know the basis for her opinion, the ALJ had a duty to seek that information rather than reject the opinion outright.  *See Smolen*, 80 F.3d at 1288.  Finally, the ALJ did not explain why he rejected Dr. Kehrer's opinion in favor of the opinions of the nonexamining state agency physicians.  As noted above, a nonexamining physician's opinion cannot by itself constitute substantial evidence that justifies rejecting a treating doctor's opinion.  *Lester*, 81 F.3d at 831.  The ALJ not provide sufficient reasons for rejecting Dr. Kehrer's opinion.

Where an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law.  *See Lester*, 81 F.3d at 834.  However, courts retain flexibility in applying the credit as true theory.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).  Where it is not clear from the record that the ALJ would be required to award benefits if the evidence is accepted were credited, the Court may remand for further determinations.  *Id.*  Here, it is not clear that the ALJ would be required to find Cunningham

1  disabled based on Dr. Wainstein's and Dr. Kehrer's opinions.  Accordingly, this case should be

2  remanded for further proceedings.

3                          V.        CONCLUSION

4       For the foregoing reasons, the Court recommends that the Commissioner's decision be

5  **REVERSED** and this case is **REMANDED** for further administrative proceedings.  On remand,

6  the ALJ should:  (1) reevaluate and further develop, as necessary, the medical evidence in the

7  record; (2) reevaluate the medical opinions in the record, (3) reevaluate Cunningham's residual

8  functional capacity; and (6) reassess steps four and five of the sequential evaluation process with

9  the assistance of a vocational expert if deemed appropriate.  A proposed order accompanies this

10  Report and Recommendation.

11       DATED this 22nd day of February, 2011.

12

13                                                          BRIAN A. TSUCHIDA
                                                        United States Magistrate Judge

REPORT AND RECOMMENDATION - 14